"This cause coming on to be heard before the undersigned judge presiding at the October, 1938, Term of Forsyth County Superior Court, and all the parties being represented in this hearing by counsel, and, in open court, having waived any right that they might otherwise have to have any of the matters involved in this action tried by a jury, and having agreed that the matter should be heard, both as to the law and the facts, by the undersigned judge, which agreement made in open court is hereby ordered to be entered in the minutes, and the court having heard the pleadings herein and the records in the case, and having heard *Page 708 
evidence, and having made a full investigation of the facts, hereby makes the following findings of fact:
"1. That F. M. Bohannon, late of Forsyth County, North Carolina, died on the 25th day of December, 1929, leaving a last will and testament, a copy of which is attached to the complaint in this action as Exhibit A, and which is hereby referred to and made a part of this finding of fact as fully as if set out herein in full. Said will has been duly probated and Wachovia Bank Trust Company has heretofore duly qualified as executor and trustee under said will; that it has performed all its duties as executor under said will, and has its final account as executor, but continues to hold the residue of the estate of F. M. Bohannon passing to it as trustee in said capacity as trustee under said will in accordance with the terms thereof.
"2. That Laura Webb Bohannon, widow of F. M. Bohannon, died a resident of Forsyth County, North Carolina, on the 17th day of June, 1933, leaving a last will, a copy of which is attached to the complaint herein as Exhibit B, and which is hereby referred to and made a part of this finding of fact as fully as if set out herein in full. Said will has been duly probated and Wachovia Bank Trust Company has heretofore duly qualified as executor and trustee under said will; that it has performed all its duties as executor under said will, and has filed its final account as executor, but continues to hold the residue of the estate of Laura Webb Bohannon passing to it as trustee in said capacity as trustee under said will in accordance with the terms thereof.
"3. This action involves a proposed settlement of a certain civil action originally instituted in the Superior Court of Mecklenburg County, North Carolina, by Ernest F. Bohannon, Jr., as plaintiff, against Wachovia Bank 
Trust Company, Executor and Trustee of the Estate of Laura Webb Bohannon and Maude Bohannon Trotman, which civil action has heretofore been considered by the Supreme Court upon a question as to the sufficiency of the plaintiff's cause of action, the decision therein being reported in 210 N.C. 679. After the decision of the Supreme Court in said cause, the said action was removed from Mecklenburg County to Forsyth County for trial and thereafter the plaintiff therein filed an amended complaint and obtained an order making the children of Maude Bohannon Trotman, hereinafter referred to, and Wachovia Bank Trust Company, as trustee of the estate of F. M. Bohannon, parties defendant. The entire record in said civil action has been introduced in evidence in this cause, and the allegations of the complaint and the amended complaint therein are all before the court, and said record is hereby referred to for a full statement of the causes of action alleged in said civil action. Said civil action and the proposed settlement thereof involve questions as to the distribution of the estate of F. M. Bohannon *Page 709 
and a cause of action for damages against the estate of Laura Webb Bohannon, growing out of alleged interference, by Laura Webb Bohannon and Maude Bohannon Trotman, with an intended disposition of the property of F. M. Bohannon, it being alleged that but for said wrongful interference the said F. M. Bohannon would have given a one-fifth interest in all his property to Ernest F. Bohannon, Jr. The property of F. M. Bohannon involved in the litigation and a one-fifth of the value of which is claimed by Ernest F. Bohannon, Jr., includes property which was transferred by F. M. Bohannon in his lifetime to a trustee for certain of the defendants, and also includes the residue of his estate passing under his will to the Wachovia Bank Trust Company as trustee for certain of the defendants.
"4. All persons, both those in esse and those not in esse, who have, or might have, any interest or claim in any of the property of the trust estate of F. M. Bohannon, or in the inter vivos trusts created by him, or in any of the property of the trust estate of Laura Webb Bohannon, have been duly made parties to this action, and all parties in esse have been duly served with summons and a copy of the complaint; all parties in esse
but not sui juris, are by duly represented herein either by duly appointed, qualified and acting general guardians, or by duly appointed guardians adlitem; all guardians and guardians ad litem have been duly served with summons and copy of the complaint and have filed answer in behalf of their respective wards; all persons not in esse who have, or might have, any interest in the matters involved in this action are likewise properly before the court, being represented by duly appointed guardians ad litem
who have filed answers in their behalf; that the interests of the estates of F. M. Bohannon and Laura Webb Bohannon, and of all persons who might be entitled to any interest under their respective wills, are further represented by Wachovia Bank Trust Company as trustee under each of said wills; that said Wachovia Bank Trust Company has filed an answer in its capacity as trustee under each of said wills and is represented in the action and at this hearing by separate counsel in each of said capacities; the court holds that all parties in interest are duly and properly before the court in such a manner as to be bound by the decree of the court, and are properly represented in the action and at this hearing. Ernest F. Bohannon, Sr., has been duly served with summons and a copy of the complaint and has filed in writing express waiver of his right to file an answer, and has filed a consent to the settlement provided for in the contract, a copy of which is attached to the complaint as Exhibit `G.'
"5. The defendants Maude Bohannon Trotman and Ernest F. Bohannon, Sr., are the only children of F. M. Bohannon and Laura Webb Bohannon; that Ernest F. Bohannon, Jr., is the only child of Ernest F. *Page 710 
Bohannon, Sr., and the only children of Maude Bohannon Trotman are the defendants John Franklin Trotman, Laura Elizabeth Trotman, Marion Jackson Trotman, Mary Camille Trotman and William Cecil Trotman; that the defendant J. C. Trotman is the husband of the defendant Maude Bohannon Trotman. That no child of Maude Bohannon Trotman has died leaving issue.
"6. That J. C. Trotman and Wachovia Bank Trust Company are the duly appointed, qualified and acting general guardians of each of the defendants Laura Elizabeth Trotman, Marion Jackson Trotman and Mary Camille Trotman, all of whom are minors; that the defendant William Cecil Trotman is a minor without general or testamentary guardian, and that Edward S. Heefner, Jr., has been duly appointed as guardian ad litem, and is duly representing said minor in this action; that Calvin Graves, Jr., has been duly appointed as guardian ad litem, and is duly representing Ernest F. Bohannon, Sr.; that Gaither Jenkins has been duly appointed as guardian ad litem, and is duly representing all unborn children of Maude Bohannon Trotman and all unborn issue of unborn children of Maude Bohannon Trotman and all unborn issue of John Franklin Trotman, Laura Elizabeth Trotman, Marion Jackson Trotman, and of Mary Camille Trotman.
"7. That Wachovia Bank Trust Company is a corporation organized under the laws of North Carolina, and is duly authorized to act as executor, trustee and guardian.
"8. That prior to the death of F. M. Bohannon, he had established for the benefit of John Franklin Trotman, Laura Elizabeth Trotman, Marion Jackson Trotman and Mary Camille Trotman, who are all the children of Maude Bohannon Trotman born prior to the death of F. M. Bohannon, certain trusts, there being a separate trust for each of said children, and the funds here in said trusts at the time of the death of said F. M. Bohannon aggregated $761,519.95.
"9. That, in addition to the property contained in the trusts set out in the preceding finding, F. M. Bohannon left at his death the property shown on Exhibit `C,' attached to the complaint herein, and which had an inventory value of $1,532,625.62, and included all the property passing under the will; that the person entitled to the corpus of the residue of said estate now in the hands of Wachovia Bank Trust Company as trustee under the terms of said will are John Franklin Trotman, Laura Elizabeth Trotman, Marion Jackson Trotman, Mary Camille Trotman, William Cecil Trotman and any other child or children who may be born to Maude Bohannon Trotman. In the event of the death of any of said Trotman children prior to the death of their mother, Maude Bohannon Trotman, or the death of Ernest F. Bohannon, Sr., the interest of such deceased child would pass to its issue then living. A *Page 711 
correct statement of the assets now held by said Wachovia Bank Trust Company as trustee under the will of F. M. Bohannon, deceased, is attached to the complaint herein as Exhibit `D,' which exhibit is hereby referred to and made a part of this finding of fact as fully as if set out herein in full and the court finds that the reasonable value of said assets shown on said exhibit at the present time is approximately $982,708.47.
"10. That Laura Webb Bohannon, widow of F. M. Bohannon, dissented from his will and thereby became entitled to a year's allowance, dower in the real estate, and one-third interest in the personal property of his estate; that the Wachovia Bank Trust Company, as executor of the estate of F. M. Bohannon, duly delivered and transferred to the said Laura Webb Bohannon her one-third interest in the personal property, made settlement with her for her year's allowance in cash, and in settlement of her dower interest in the real estate conveyed to her a life estate in the home place at No. 960 W. Fifth Street, in Winston-Salem, N.C. and a one-third undivided interest in fee simple in two tracts of land known as the main factory, leaf house and storage shed, property situated on Patterson Avenue, Fifth and Chestnut streets. Said executor has also paid all debts and funeral expenses, and all estate, inheritance, succession, transfer and other taxes levied and imposed upon the estate, or any part thereof, as provided in the first item of the will of F. M. Bohannon, deceased, and that the estate of F. M. Bohannon now in the hands of said Wachovia Bank Trust Company is held by it in trust, pursuant to the terms of said will, copy of which is hereto attached, marked Exhibit A.
"11. That a correct statement of the assets now held by Wachovia Bank 
Trust Company as trustee of the estate of Laura Webb Bohannon is attached to the complaint in this action as Exhibit `F' and is hereby referred to and made a part of this finding of fact as fully as if set out herein in full, and the court finds as a fact that the reasonable present value of the assets shown on said exhibit is $190,000.00.
"12. That the debts, taxes and costs of administration of the estate of Laura Webb Bohannon have been paid and all specific bequests have been duly delivered to the beneficiaries, and that the assets of said estate now in the hands of the trustee thereof, and referred to in the preceding finding of fact, are now held by said trustee under the terms and provisions of Item IV of the will of the said Laura Webb Bohannon.
"13. That the five Trotman children share in the two estates of F. M. Bohannon and Laura Webb Bohannon when taken together with substantial equality, the failure of William C. Trotman, born after the death of F. M. Bohannon, to participate in the inter vivos trusts established by F. M. Bohannon, being substantially equalized by the will of Laura Webb Bohannon. *Page 712 
"14. That the plaintiff Ernest F. Bohannon, Jr., was utterly excluded from any participation in the inter vivos trusts established by F. M. Bohannon, and also from any participation whatever either in the estate of his grandfather, F. M. Bohannon, or in the estate of his grandmother, Laura Webb Bohannon. In the action instituted by the said Ernest F. Bohannon, Jr., in the Superior Court of Mecklenburg County, and thereafter removed to Forsyth County, which action has been referred to in a preceding finding of fact, it is alleged that the said exclusion of Ernest F. Bohannon, Jr., was the result of wrongful acts on the part of Laura Webb Bohannon and Maude Bohannon Trotman, and that but for said wrongful acts said Ernest F. Bohannon, Jr., would have been given a one-fifth interest in the intervivos trusts and a one-fifth interest in the estate of F. M. Bohannon, deceased. In the original complaint in said action, the relief sought was damages against the estate of Laura Webb Bohannon and Maude Bohannon Trotman in the amount of $393,184.39. In the amended complaint it is alleged that the remedy at law against the original defendants in said action is inadequate and that the plaintiff therein is entitled to relief of a legal or equitable nature against the estate of F. M. Bohannon and the persons participating therein under his will.
"15. That the plaintiff Ernest F. Bohannon, Jr., and the defendants Maude Bohannon Trotman and J. C. Trotman and John Franklin Trotman, and J. C. Trotman as one of the guardians, respectively, of Laura Elizabeth Trotman, Marion Jackson Trotman, and Mary Camille Trotman, have entered into a written contract dated September 30, 1938, a copy of which is attached to the complaint herein as Exhibit `G,' and which is hereby referred to for all the terms thereof, and is made a part of this finding of fact as fully as if set out herein in full, and that this action has been instituted by the plaintiff herein as contemplated by said contract for the purpose of obtaining an adjudication of the court as to the validity of said contract, and in order that all fiduciaries may be properly advised and instructed by the court as to the validity thereof and their duties in regard thereto.
"16. That if said contract is approved, it will result in a final and complete settlement of the pending litigation between the parties and of all controversies in reference to distribution of the estate of F. M. Bohannon and Laura Webb Bohannon, and all controversies among the parties in reference to the inter vivos trusts created by F. M. Bohannon for certain of the defendants. That the approval and consummation of said settlement would also result in a permanent healing of the breach heretofore existing in the family relations and between the different branches of the family as more fully set out in a subsequent finding of fact, and would tend to preserve and protect the peace, honor and dignity of the family. *Page 713 
"17. That the absolute elimination of E. F. Bohannon, Jr., from any participation whatever in his grandfather's estate resulted in a bitter and far-reaching breach in the family relations between the Trotman and Bohannon branches of the family, and that this breach, instead of healing, had a tendency to widen as time went on, culminating in the family lawsuit referred to in the preceding findings of fact herein. Since the institution of said action, however, and since the decision of the Supreme Court therein, there has been a change in the family relationship and the feelings of the respective members of the family toward each other, and if the original cause of the breach of the family relations as referred to in the preceding paragraph hereof can be removed and the pending litigation settled upon a basis which all the parties consider fair and reasonable, peaceful and friendly family relations among all members of both branches of the family can be permanently reestablished. On the other hand, if the said litigation is allowed to remain pending and is not settled except by a trial, it will act as a constant barrier to the establishment of family peace. If said action were to go to trial, it would plunge the family into litigation which would doubtless extend over a number of years and be attended with an enormous amount of expense, uncertainty and risk, as well as unfavorable publicity; that it would seriously jeopardize the trusts established by F. M. Bohannon, both in his lifetime and by the terms of his will; that it would tend to expose to the public gaze intimate family affairs which should be kept within the family circle, and that it would tend to destroy the peace, honor and dignity of the family resulting in embarrassment and humiliation to the various members thereof; that it would inevitably renew the breach of the family relations and would render any further reconciliation impossible.
"18. That the contract of settlement entered into between the plaintiff herein and all the members of the Trotman family who are sui juris was agreed upon after long, careful and painstaking consideration on the part of all the parties thereto, and that said parties have taken into consideration all the facts and circumstances in connection therewith, and have sincerely sought to arrive at such an agreement as would put an end to family litigation and dissension and would reestablish peace and concord.
"19. The court finds as a fact that settlement under the terms of the contract attached to the complaint marked Exhibit `G' is for the best interests of all the parties, including the present, prospective and contingent beneficiaries of the trust under the will of F. M. Bohannon, and that it is for the best interests of Laura Elizabeth Trotman, Marion Jackson Trotman and Mary Camille Trotman, and of all the other infants who are parties to this action, and their unborn issue. *Page 714 
"19-A. The court finds as a fact that settlement on the basis provided for in the contract attached to the complaint as Exhibit `G' is for the best interests of all the present, prospective and contingent beneficiaries of the trust established under the will of Laura Webb Bohannon and is for the best interest of the infant, William Cecil Trotman, and his unborn issue.
"20. The court finds that the said settlement will prevent dissipation and waste and will more nearly accomplish the primary objects and effectuate the real intention of the creators of said trusts than could be accomplished by a rejection of said settlement and a relegation of the parties to bitter family strife and long-drawn-out litigation.
"21. The court finds as a fact that it is for the best interest of all parties concerned, and that it is the most equitable way to make said settlement, for the settlement to be made from the estate of F. M. Bohannon as provided for in said contract, and the court further finds that said settlement in said manner will more nearly effectuate the primary intentions of F. M. Bohannon and Laura Webb Bohannon than a settlement made in any other manner or from any other source.
"22. The plaintiff, in good faith, claims the right in the pending action to recover from the assets of the estates of F. M. Bohannon and Laura Webb Bohannon or from the persons who received said assets, the total sum of $393,184.39, or property of that value. Under the terms of said family settlement, plaintiff is to receive outright from the estate of F. M. Bohannon cash and property which the court finds to have a value approximately of $90,645.44. In addition thereto there is to be set up from the income and corpus of said estate a trust fund of cash and property of the aggregate value of $100,000 for the benefit of said Ernest F. Bohannon, Jr., and his wife, issue and next of kin. In consideration therefor the plaintiff is to release and give up all claims involved in the pending action, and all claims in, or against, the estates of F. M. Bohannon and Laura Webb Bohannon, or any other party or parties to this action. The court finds that said claims of the plaintiff are reasonably worth the value of the property to be received by him and the property to be set up in trust in said family settlement and said settlement constitutes a reasonable and equitable settlement of the conflicting claims involved.
"23. The court finds as facts that the disputes involved in the pending litigation are bona fide disputes, the parties thereto making adverse contentions in good faith; that a determination of the rights of the parties by carrying said litigation to a conclusion would involve long and expensive litigation and a determination of difficult and doubtful questions of fact and of law; that there would be conflicting testimony and the result of a trial in the Superior Court would be uncertain. Regardless of the *Page 715 
outcome of the trial in the Superior Court, there would doubtless be an appeal by the losing party to the Supreme Court, with the possibility of other trials before the litigation was finally concluded. The final outcome of said litigation would be doubtful and would be attended with risk on the part of all parties. That leaving the parties to work out their rights in said litigation would not only permanently impair the honor and dignity of the family and result in permanent family discord, but it would also seriously jeopardize the trusts involved, and that the court can more nearly carry out the primary intentions of the creators of said trusts and better preserve and safeguard said trusts by approving the family settlement than by leaving the parties to obtain an adjudication of their rights by litigation.
"It is, therefore, upon the foregoing findings of fact and upon the record, concluded as matters of law, and adjudged by the court as follows:
"(1) The court holds that, in its equity jurisdiction, looking to the interests of the family as a whole, and exercising the power of courts of equity to approve family settlements, and thereby preserve family ties and the honor and dignity of the family, the court has the power in this case to approve the settlement agreed upon by certain of the parties and to bind all parties not sui juris and those not in esse.
"(2) That the contract of settlement, copy of which is attached to the complaint herein as Exhibit `G,' is hereby approved by the court, and is adjudged to be legally binding upon the parties thereto, and is hereby made legally binding upon all other parties in interest, including trustees, guardians, guardians ad litem, minors and unborn persons in interest.
"(3) That Wachovia Bank Trust Company, as trustee of the estate of F. M. Bohannon, deceased, is hereby advised and instructed that it is the duty and it is hereby ordered and directed, as such trustee, to carry out and perform the terms of said contract and, in accordance therewith, to pay and deliver to the plaintiff herein the cash and property directed to be paid and delivered to him by the said contract, and to set up the new trust fund as provided for in the said contract, a copy of which is attached to the complaint herein as Exhibit `G'; and said Exhibit `G' attached to the complaint herein is hereby incorporated in, and made a part of, this decree as fully as if set out herein, in full; and it is ordered that said Exhibit `G' shall be included as a part of any certified copy of this decree which may be used for recording in the office of the register of deeds of any county in which any real estate affected hereby is located. It is hereby adjudged by the court that said Exhibit `G' shall constitute the trust instrument under which the said new trust shall be set up and administered, and the said trust instrument was intended by the parties *Page 716 
to this action to constitute and set up an irrevocable trust and that such trust is hereby adjudged to be irrevocable.
"(4) That this decree operate and it is hereby declared to operate as a conveyance from the Wachovia Bank Trust Company, as trustee under the will of F. M. Bohannon, and from all other parties to this action who may have any legal or equitable title therein, to Wachovia Bank Trust Company, as trustee under the contract containing the trust provisions, a copy of which is attached to the complaint marked Exhibit `G' of a 19.4 per cent undivided interest in all the real estate held by Wachovia Bank 
Trust Company as trustee under the will of F. M. Bohannon or owned by said trust estate of F. M. Bohannon on the date of this decree, and in the event of the sale of any of said real estate between this date and the date of distribution, then said Wachovia Bank Trust Company shall transfer to itself as trustee under the contract marked Exhibit `G' 19.4 per cent of the consideration that may be received for any such real estate so sold.
"(5) It is further ordered, adjudged and decreed that the Wachovia Bank Trust Company, as trustee under the will of F. M. Bohannon, shall, at the time the trust which is established under the contract marked Exhibit `G' is set up, execute and deliver to Wachovia Bank Trust Company, as trustee under said contract, a deed conveying title in fee simple to 19.4 per cent undivided interest in the real estate held by it as trustee under the will of F. M. Bohannon upon the date of this decree, or, in the event of an appeal to the Supreme Court, and an affirmance of this decree, as of the date the decision of the Supreme Court is filed in the Superior Court.
"(6) The court further advises and instructs all fiduciaries who are parties to this action, whether in their own right or in a representative capacity, that it is their duty and they are hereby ordered and directed as such fiduciaries to recognize the contract of settlement hereinbefore referred to as valid and binding.
"(7) The costs of this action, including the fees of all guardians adlitem, when approved by the court, shall be paid by Wachovia Bank Trust Company, trustee of the estate of F. M. Bohannon, from the assets of the estate of F. M. Bohannon in the hands of said trustee, and the said trustee shall likewise pay the costs of the action instituted in the Superior Court of Mecklenburg County, N.C. and hereinbefore referred to and now pending in the Superior Court of Forsyth County, and a proper judgment shall be entered in said cause dismissing said action upon the carrying out of the contract of settlement in accordance with this decree.
"(8) This action is held open until the trust hereinbefore referred to is fully established under the contract, Exhibit `G,' and for such period *Page 717 
thereafter as may be deemed proper for the purpose of supervising the setting up and establishing the said trust, and for the purpose of adjusting in this action any rights or equities that may arise between Ernest F. Bohannon, Jr., and the other beneficiaries of the trust provided for in Exhibit `G' attached to the complaint, in connection with the settlement herein approved and the establishing of said trust.
"This 26 day of October, 1938. Hubert E. Olive, Judge Presiding."
Wachovia Bank Trust Company, executor and trustee of the estate of F. M. Bohannon, groups its exceptions and assigns error as follows:
"1. In that the court overruled its objection to the hearing of the case at the October Term, since no answer had been filed by Ernest F. Bohannon, Sr., and the time for answering had not expired, to which this defendant excepted.
"2. In that the court found as a fact that the settlement under the terms of the contract attached to the complaint marked Exhibit `G' is for the best interests of all the parties.
"3. In that the court entered judgment directing Wachovia Bank Trust Company as trustee of the estate of F. M. Bohannon to carry out and perform the terms of the contract attached to the complaint as Exhibit `G,' and to pay and deliver to the plaintiff cash and properties as therein directed and to set up the new trusts as provided in said contract.
"4. In that the Court signed and entered the judgment set out in the record."
Edward S. Heefner, Jr., guardian ad litem for William Cecil Trotman and the unborn issue of William Cecil Trotman and all other persons not in esse
who might qualify as next of kin of William Cecil Trotman, so as to have or take any interest under the will of Laura Webb Bohannon, groups his exceptions and assigns error as follows: "In that the court signed and entered the judgment set out in the record."
Gaither Jenkins, guardian ad litem for all unborn children of Maude Bohannon Trotman, and all unborn issue of unborn children of Maude Bohannon Trotman, and all unborn issue of John Franklin Trotman, and all unborn issue of Laura Elizabeth Trotman, and all unborn issue of Marion Jackson Trotman, and all unborn issue of Mary Camille Trotman, groups his exceptions and assigns error as follows: "In that the court signed and entered the judgment set out in the record."
The following exception and assignment of error made by defendant Wachovia Bank Trust Company, executor and trustee of the estate of F. M. Bohannon, cannot be sustained: "(1) That the court overruled its objection to the hearing of the case at the October Term since no answer had been filed by Ernest F. Bohannon, Sr., and the time for answering had not expired, to which this defendant excepted. . . . At the time of the hearing, Ernest F. Bohannon, Sr., had not filed an answer and that thirty days had not elapsed since service upon him of the summons and complaint." In its brief it states: "The statutory time for answering, however, has now expired, and it may be admitted that the record in the clerk's office does not show either an answer or demurrer filed by Ernest F. Bohannon, Sr."
On the record, we find that "Upon proper evidence, the clerk of the Superior Court of Forsyth County found: `That the defendant Ernest F. Bohannon, Sr., has been committed as an inebriate, and that, although there has been no order depriving him of his legal status, except an order of commitment, it is proper that he be represented by a guardian ad litem in this proceeding in addition to defending himself personally, if he desires to do so.' Consequently, a guardian ad litem was appointed for him, and this guardian filed an answer on his behalf. . . . The matter also was taken up with him personally, and he expressly waived the right to file an answer, and stated that he was in favor of the settlement, this consent and waiver being verified before a notary public." The right to file an answer is a privilege which may be waived.
In Beebe v. Beebe Co., 46 A. 168 (170-171), the defendant waived the time for filing answer and a judgment was taken before the statutory time had expired. In approving this procedure, the Court said: "Section 105 of the Practice Act allows the defendant 30 days after the filing of the declaration within which to plead thereto. But this provision was enacted in the interest of the defendant, and he may waive it, and put himself in default at any time; and, when so in default, either by his own acknowledgment of the justness of the plaintiff's claim, and waiver of time to plead, a judgment by default for a want of a plea may *Page 719 
be entered against him. Hoguet v. Wallace, 28 N.J. Law, 524. Proper practice requires that the admission by the defendant of the justice of the plaintiff's claim, and his waiver of time to plead to the latter's declaration, should be in writing, and filed in the clerk's office."
The following exception and assignment of error made by defendant Wachovia Bank Trust Company, executor and trustee of the estate of F. M. Bohannon, cannot be sustained: "(2) In that the court found as a fact that the settlement under the terms of the contract attached to the complaint marked Exhibit `G' is for the best interests of all the parties." This is the main controversy in this case. We think there was sufficient competent evidence to support the findings of fact, and the conclusions of law thereon are fully sustained by the authorities in this jurisdiction.
The settlement was based mainly on a decision of this Court, Bohannon v.Trust Co., 210 N.C. 679, where it was held: "Plaintiff alleged that his grandfather had formed a fixed intention to settle a large part of his estate on plaintiff, that defendants conspired together to deprive plaintiff of his share of the estate, and by false and fraudulent representations induced his grandfather to abandon his intention to leave plaintiff a large part of his property, and that but for such false and fraudulent representations plaintiff's grandfather would have carried out his previous intention and would have devised for the benefit of plaintiff a large part of the estate. Held: The facts alleged are sufficient to constitute a cause of action against defendants, the cause being analogous to the right of action for wrongful interference with contractual rights by a third person."
The amended complaint stated a cause of action against the beneficiaries of the F. M. Bohannon estate.
It is contended by plaintiff: "(1) If Maude Bohannon Trotman and Laura Webb Bohannon (the two original defendants) had obtained the property themselves as devisees under the F. M. Bohannon will, they would have been declared constructive trustees for the benefit of the plaintiff. (2) If the property in the hands of the wrongdoers would thus have been subject to a constructive trust, it is likewise subject to such a trust in the hands of the donees of said property. Dealing with these propositions in the order stated: (1) If the original defendants had themselves, as devisees, obtained property which, but for their wrong, would have gone to the plaintiff, they would have been declared constructively trustees underSummer v. Staton, 151 N.C. 198." Teachey v. Gurley, ante, 288; Chambersv. Byers, ante, 373; 2 Pomeroy's Equity Jurisprudence (3rd Ed.), sections 912 and 913. (2) "Inasmuch as the beneficiaries under the will of F. M. Bohannon are donees, the property in their hands is subject to the same constructive trusts as if it were in the hands of the original wrongdoers." 3 Bogart, Trusts Trustees, sec. 473. We think these contentions of plaintiff correct. *Page 720 
In Ruhe v. Ruhe, 77 Atl. P., 800 (Court of Appeals, Md.), it is thus stated: "It is also settled that property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person who received the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured, or, as Lord Chief Justice Wilmot said: `Let the hand receiving the gift be ever so chaste; yet if it comes through a polluted channel, the obligation of restitution will follow it.' 1 Perry on Trusts, sec. 211. While the allegations of this bill may not be sufficient to create a resulting trust, as urged by the appellee, there can be no doubt that they are sufficiently certain and definite to gratify the requirements of law as to the creation of a valid trust that will be enforced by a court of equity." Saar v. Weeks, 178 P. 819; Bank v.Crowder, 194 N.C. 312.
There was plenary evidence to support the facts found by the court below. The conclusions of law are fully sustained by the authorities in this and other court in the exercise of its equitable jurisdiction approving family settlements made like the present.
In Price v. Price, 133 N.C. 494 (504), it is written: "The principles by which courts of equity are governed in sustaining and enforcing such contracts as to the one set out in this record are well settled and strongly stated by Lord Hardwicke in the case of Stapilton v. Stapilton, 1 A. 2 (2 White Tudor's L. C., 1675, star p. 824). In speaking of a contract made for the purpose of settling a family controversy he says: `It was to save the honor of the father and his family, and was a reasonable agreement; and, therefore, if it is possible for a court of equity to decree a performance of it, it ought to be done. . . . And, considering the consequence of setting aside this agreement, a court of equity will be glad to lay hold of any just ground to carry it into execution, and to establish the peace of a family.'" Reynolds v. Reynolds, 208 N.C. 578 (622).
In Armstrong v. Polakavetz, 191 N.C. 731 (734-5), we find: "In 5 R. C. L., p. 878, it is said: `It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely scrutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights of parties; the consideration of each agreement is not only valuable, but highly meritorious. They are encouraged because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement. Courts of equity, like courts of law, do not discountenance compromises of doubtful claims, much less of suits actually *Page 721 
instituted for litigating such claims. Such rule would tend to defeat and discourage all compromise. Equity favors amicable adjustments, and will not disturb them unless its jurisdiction is invoked in favor of one without knowledge at the time by satisfactory evidence of deception, fraud or mistake.' This has always been the policy of this State borne out by numerous authorities. Sutton v. Robeson, 31 N.C. 380; Williams v.Alexander, 39 N.C. 207; Mayo v. Gardner, 49 N.C. 359; Barnawell v.Threadgill, 56 N.C. 58; York v. Westall, 143 N.C. 276; Peyton v. ShoeCo., 167 N.C. 280. In Beck v. Wilkins-Ricks Co., 186 N.C. 214, it is said: `In Mayo v. Gardner, 49 N.C. 359, this Court, by Chief JusticeNash, says: "In re Lucy, 21 Eng. Law and Eq. Rep., 199, it was decided that, to sustain a compromise, it was sufficient if the parties thought, at the time of entering into it, that there was a bona fide (or real) question between them, though in fact there was no such question." The law favors the settlement of disputes, as was said in that case. It is stated in 9 Cyc., 345, that "the compromise of a disputed claim may uphold a promise, although the demand was unfounded," citing numerous cases in the notes to sustain the text.'" Trust Co. v. Nicholson, 162 N.C. 257.
In Tise v. Hicks, 191 N.C. 609 (613-614), we find: "Family settlements, such as that made by these brothers and sisters, when fairly made, and when they do not prejudice the rights of creditors, are favorites of the law. They are made by members of a family, after the death of the father or mother, when the ties of family affection are strong and sacred, and before they are weakened by separation of brother and sisters, which is inevitable. They are made in recognition of facts and circumstances known, often, only to those who have lived in the sacred family circle, and which a just family pride would not expose to those who neither understand nor appreciate them. They proceed from a desire on the part of all who participate in them to adjust property rights, not upon strict legal principles, however just, but upon such terms as will prevent possible family dissensions, and will tend to strengthen the ties of family affection. The law ought to, and does respect such settlements; it does not require that they shall be made in accord with strict rules of law; nor will they be set aside because of objections based upon mere technicalities. Judge Gaston, speaking of an agreement similar to that involved in this action, says, in Bailey v. Wilson, 21 N.C. 182, `The agreement was confessedly entered into for the purpose of quieting disputes between the children of the same father, in relation to the disposition of his property; it is apparently equal; it is not denied to be fair, and was deliberately assented to as a proper and just family arrangement. Such arrangements are upheld by considerations affecting the interest of all parties, often far more weighty than any consideration simply pecuniary.' *Page 722 
11 R. C. L., 29, sec. 15; 18 C. J., 891, sec. 159; Moore v. Gregory (Va.),131 S.E. 692." 65 C. J., pp. 683-4; 69 C. J., at p. 1274; In re Reynolds,206 N.C. 276; Reynolds v. Reynolds, 208 N.C. 254; Reynolds v. Reynolds,208 N.C. 578 (620-624); Bank v. Alexander, 188 N.C. 667 (671); Spencerv. McCleneghan, 202 N.C. 662 (671); Raleigh v. Trustees, 206 N.C. 485;Martin v. Comrs. of Wake, 208 N.C. 354; Trust Co. v. Wade, 211 N.C. 27;Cutter v. Trust Co., 213 N.C. 686; 2 Pomeroy Equity (4th Ed.), sec. 850.
In the brief of defendants Mrs. Maude Bohannon Trotman, J. C. Trotman and John Franklin Trotman, and J. C. Trotman as one of the co-guardians of Laura Elizabeth Trotman, Marion Jackson Trotman and Mary Camille Trotman, respectively, is the following: "Counsel for the above named defendants, therefore, contend that the judgment of the Superior Court should be affirmed. In conclusion, they hope that they will be pardoned for stating to the court that it is the very sincere wish of the members of the Trotman family that the settlement be finally approved by the Supreme Court."
In the brief of Calvin Graves, Jr., guardian ad litem for Ernest F. Bohannon, Sr., is the following: "Calvin Graves, Jr., guardian ad litem for Ernest F. Bohannon, Sr., adopts the propositions of law set forth in the brief of Ernest F. Bohannon, Jr., plaintiff, and also adopts the argument in the brief of counsel for Mrs. Maude Bohannon Trotman, J. C. Trotman and John Franklin Trotman, and J. C. Trotman as one of the co-guardians of Laura Elizabeth Trotman, Marion Jackson Trotman and Mary Camille Trotman. Counsel for the above named defendant, therefore, respectfully argues and contends that the judgment of the Superior Court should be affirmed."
The case is a moving picture of distressing circumstances which we need not emphasize. The father and mother of the minor, trust beneficiaries, agree to the family settlement and think it is for the best interest of all parties that the litigation which is with their blood kin be compromised and adjusted and the family differences be ended forever. That the property rights affected by the adjustment is nothing in comparison to the benefit of ending a serious family feud, which might continue on and on through the generations to come. From the exigencies that are continually arising in the human family, from very necessity a power must exist somewhere to grant relief in such cases of dire need. Under our system of jurisprudence it is vested in the courts of equity. The court below, after a full hearing, has entered a decree approving this settlement.
From a careful review of the record and briefs, we think the judgment of the court below must be
Affirmed. *Page 723